# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Bridgette Trice, as trustee for the heirs
and next of kin of Devyn Bolton, deceased,

      Plaintiff,

v.

Napoli Shkolnik PLLC, Hunter J.
Shkolnik, Paul Napoli Law PLLC,
and Napoli Bern Ripka Shkolnik LLP,

      Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 18-3367 ADM/KMM

_____

Denise S. Rahne, Esq., Eric J. Magnuson, Esq., and Ena M. Kovacevic, Esq., Robins Kaplan LLP, Minneapolis, MN, on behalf of Plaintiff.

Robert W. Vaccaro, Esq., M. Gregory Simpson, Esq., and Travis J. Allen, Esq., Meagher & Geer, P.L.L.P., Minneapolis, MN, on behalf of Defendant Napoli Shkolnik PLLC.

_____

## I.  INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Plaintiff Bridgette Trice's ("Trice") Motion for Summary Judgment [Docket No. 116]; Trice's Motion to Exclude Portions of Expert Opinion [Docket No. 110]; Defendants Napoli Shkolnik PLLC ("NS"), Hunter J. Shkolnik ("Shkolnik"), Napoli Bern Ripka Shkolnik LLP ("NBRS"), and Paul Napoli Law PLLC's ("PNL") (collectively, "Defendants") Motion for Summary Judgment and to Dismiss [Docket No. 104]; and Defendants' Motion to Exclude Expert Opinion [Docket No. 97].  For the reasons set forth below, Trice's Motion for Summary Judgment is denied, Trice's Motion to Exclude Expert Opinion is granted, Defendants' Motion for Summary Judgment and to Dismiss is granted in part and denied in part, and Defendants' Motion to Exclude Expert Opinion is denied.

## II.  BACKGROUND

### A.  Parties

Trice is the trustee for the heirs and next of kin of her deceased daughter Devyn Bolton ("Bolton").  Second Am. Compl. [Docket No. 64] ¶ 3.  In 2006, Bolton was a passenger in a car stopped at an intersection in St. Paul, Minnesota when a Toyota Camry slammed into the car. Id. ¶ 15.  After surviving the impact of the collision, Bolton died in 2007 from injuries sustained in the crash.  Id.

NBRS, PNL, and NS are New York law firms that share the address of 400 Broadhollow Road in Melville, New York.  First Vaccaro Decl. [Docket No. 26] Exs. A, B, G.  NBRS is a limited liability partnership ("LLP") that was formed in July 2011 and no longer accepts new clients or cases.  Id. Ex. G; First Rahne Aff. [Docket No. 131] Ex. 14.  PNL is a professional limited liability company ("PLLC") formed in April 2014.  First Vaccaro Decl. Ex. B.  PNL's founding partner is a former partner of NBRS and continues to represent NBRS clients.  First Rahne Aff. Ex. 14.  NS is a PLLC formed in July 2015.  First Vaccaro Decl. Ex. A.  Shkolnik is an attorney licensed to practice law in New York and New Jersey.  Second Am. Compl. ¶ 8; Defs.' Joint Answer [Docket No. 71] ¶ 8.  Shkolnik is a former partner with NBRS and a current partner with NS.  Id.

### B.  Toyota Litigation

In 2010, Trice sued Toyota Motor Corporation ("Toyota") in Minnesota state court, alleging a design defect in the Toyota Camry caused the 2006 accident.  Second Am. Compl. ¶ 15; Defs.' Joint Answer ¶ 1; Trice v. Toyota Motor Corp., Civ. No. 10-2804 ADM/DTS (D. Minn.) ("Toyota Litigation").  The case was removed to the United States District Court for

2

the District of Minnesota.  See Notice Removal [Toyota Litigation Docket No. 1].

Trice initially retained Minnesota attorney Michael Padden ("Padden") of Padden Law Firm LLC to represent her in the Toyota Litigation.  Second Vaccaro Decl. [Docket No. 108] Ex. E ("Padden Dep.") at 30:5–13.  Shortly thereafter, Padden engaged Minnesota attorney Kenneth R. White ("White") of the Law Office of Kenneth R. White, P.C. to assist in the action. Id. at 30:14–25.  In April 2010, Padden and White, with Trice's consent, chose the Ohio law firm of Waite, Schneider, Bayless and Chesley Co., LPA (the "Chesley Firm") to serve as Trice's litigation counsel.  Id. at 32:20–33:19.  The Chesley Firm was selected because a named partner, Stanley Chesley ("Chesley"), served as counsel in a multidistrict litigation case alleging sudden unintended acceleration in Toyota vehicles.  First White Decl. [Toyota Litigation Docket No. 723] ¶ 2; First Padden Decl. [Toyota Litigation Docket No. 737] Ex. 8.

In July 2012, NBRS was added to Trice's litigation team.  Second Vaccaro Decl. Ex. B. NBRS was added because Chesley was facing disbarment proceedings arising out of conduct from an unrelated case.  Id. Ex. C.  Shkolnik signed the engagement letter on behalf of NBRS. Id. Ex. B.  The Chesley Firm withdrew from the Toyota Litigation in June 2013.  First Vaccaro Decl. Ex. D.

After NBRS was retained as counsel in the Toyota Litigation, the Court issued orders requiring expert disclosures to be served in November 2012 and discovery to be completed by May 31, 2013.  See Order Joint Mot. Extension Time Expert Disclosure [Toyota Litigation Docket No. 249]; Fourth Am. Scheduling Order [Toyota Litigation Docket No. 262].  In November 2012, White sent an email to NBRS stating, "I assume that we will be designating experts in some manner in compliance with the court order."  White Reply Decl. [Toyota

Litigation Docket No. 808] ¶ 6, Ex. 2.

On January 23, 2013, White received a courtesy copy of a letter sent by Toyota to NBRS informing them that discovery responses were overdue and that Trice had not served expert disclosures by the November 2012 deadline.  Id. Ex. 4.  White sent an email to NBRS referencing the Toyota correspondence and stating, "I trust that you will get these issues corrected immediately to the extent that the letter is accurate."  Id.  NBRS attorney Thomas Cleere ("Cleere") responded to White on January 24, 2013 by saying, "We responded to this already, they were looking for medicals on Devyn Bolton."  Coates Decl. [Toyota Litigation Docket No. 754].  On January 28, 2013, Cleere sent a letter to Toyota's counsel stating that he (Cleere) had "forwarded the authorization to release medical and billing information . . . to [Trice] for execution," and that "[u]pon receipt, I will forward same to your attention along with plaintiff's expert disclosures."  Third Vaccaro Decl. [Docket No. 125] Ex. A.  Cleere sent a courtesy copy of this letter to White, Padden, and the Chesley Firm.  Id.

In April 2014, Trice learned that without her knowledge or consent the NBRS made a settlement demand to Toyota in February 2014.  Second Vaccaro Decl. Ex. D.  Padden and White first learned of the settlement demand through an email they received from Toyota's counsel stating that settlement demands relayed by NBRS to Toyota were "too high to lead to productive negotiations."  First White Decl. Ex. 3.  NBRS had not consulted with Padden, White, or Trice before making the demand.  Second Vaccaro Decl. Ex. D.  Upon learning of NBRS' unauthorized settlement demand, Trice sent NBRS an April 22, 2014 letter terminating their attorney-client relationship and demanding that NBRS withdraw from representing her immediately.  Id.  In the letter, Trice asserted that NBRS breached its fiduciary duty to her by

4

making the settlement demand.  Id.  Three days after the date of this letter, PNL was formed.

See First Vaccaro Decl. Ex. B.  NBRS assigned the "winding down" of the Trice matter to PNL.

Id. Ex. F.

On July 23, 2014, Padden sent a letter to NBRS asking that Trice's case files be

forwarded to the Padden Firm.  First Markovits Decl. [Toyota Litigation Docket No. 721] Ex. 1

at 2.[1]  On August 4, 2014, NBRS responded that it would "draft a letter outlining any expenses

incurred," and that "[u]pon payment of the expenses we will immediately make arrangements to

transfer the file."  Id. at 5.  Trice's attorneys informed NBRS that the files were needed as

quickly as possible because trial was scheduled for November 3, 2014, less than three months

away.  Id. at 4.  NBRS persisted in its position until Trice's counsel alerted NBRS to Minnesota

Rule of Professional Conduct 1.16(g), which prohibits a lawyer from conditioning the return of

client papers and property upon the payment of the lawyer's fees or the cost of copying the file.

Id. ¶ 3, Ex. 1 at 2–3, 7.  The trial was later continued until January 2015.

Following termination of NBRS, Trice retained the law firm of Markovits, Stock &

DeMarco, LLC ("MSD") to serve as lead counsel.  Markovits Reply Decl. [Toyota Docket No.

772] ¶¶ 2, 5.  Two of MSD's principals, Markovits and Stock, were former associates of the

Chesley Firm and had worked on Trice's case when they were employed at the Chesley Firm.

Id. Ex. 3 [Toyota Litigation Docket No. 776].

Prior to trial, MSD learned that approximately $500,000 of Devyn Bolton's $1.5 million

in medical expenses had not been disclosed before the close of discovery.  First Markovits Decl.

¶ 5.  Additionally, Trice's only damages expert, Dr. Harvey Rosen, had not been disclosed prior

---

[1] The page number references to this Exhibit are to the numbers in the top right corner of the page that have been assigned by the Court's electronic filing system.

to the November 2012 deadline set by the Court.  Id. ¶ 6.  Thus, Dr. Rosen could not testify at

trial even though he had prepared a report, been deposed, and had been paid $3,200 in expert

witness fees by Trice.  Id. ¶ 6, Ex. 3.

At trial, Toyota agreed to stipulate to medical expenses that had been disclosed during

discovery, but refused to stipulate to medical expenses that had not been disclosed.  See Second

Vaccaro Decl. Ex. A at 181:6–182:13; First Rahne Aff. Ex. 2 at 77:21–22, 78:5–6.  As a result,

the Court limited the amount of medical expenses that was admissible at trial to the amount

disclosed in discovery.  Second Vaccaro Decl. Ex. A at 185:2–12.

## C.  Fee Dispute

Trice, along with other plaintiffs, prevailed in her jury trial against Toyota.  See Verdict

[Trice Litigation Docket No. 550].  She was awarded a $5.5 million judgment.  Judgment [Trice

Litigation Docket No. 729].  After the trial, Trice moved for a distribution of disputed attorneys'

fees.  See Pl.'s Mot. [Toyota Litigation Docket No. 716].  Trice argued that NS forfeited its right

to fees by engaging in bad faith and breaching its fiduciary duties to Trice.  NS filed a response

arguing it was formerly NBRS and was entitled to a quantum meruit recovery for the value of the

services it provided in the Toyota Litigation.  See Corrected Resp. [Toyota Litigation Docket

No. 746, Attach. 1] at 3 ("Napoli Shkolnik (formerly Napoli Bern Ripka Shkolnik) conducted

significant work on this action, and has asserted a lien for the reasonable value of its services.").

This Court denied NS's request for a quantum meruit recovery after determining that

Trice did not benefit from NS's representation and that NS failed to prove its requested fees were

reasonable.  Mem. Op. & Order [Trice Litigation Docket No. 860] ("Fee Order") at 13–16.  In

reaching this conclusion, the Court relied on the equitable doctrine of quantum meruit, rather

than the law of fee forfeiture.  See id. at 13–16.  The Court considered the following relevant

factors for determining the reasonable value of legal services: "the time and labor required; the nature and difficulty of the responsibility assumed; the amount involved and the results obtained; the fees customarily charged for similar legal services; the experience, reputation, and ability of counsel; and the fee arrangement existing between counsel and the client." Id. at 13 (quoting State by Head v. Paulson, 188 N.W.2d 424, 426 (1971)).  The Court concluded that NS' representation caused Trice more harm than good because NS failed to timely disclose $500,000 in medical expenses and also failed to disclose Trice's expert witness.  Id. at 13–15.  The Court found that NS provided no argument or evidence for why Toyota would not have stipulated to the additional medical expenses had they been timely disclosed.  Id. at 14.  The Court further determined that NS failed to demonstrate that its fees were consistent with those customarily charged for similar legal services.  Id. at 15.

NS appealed the denial of its quantum meruit request and the Eighth Circuit affirmed, holding the district court properly reviewed NS' quantum meruit claim.  See Napoli Shkolnik PLLC v. Toyota Motor Corp., 955 F.3d 745, 750 (8th Cir. 2020).

**D.  Malpractice Suit**

In December 2018, Trice filed this legal malpractice suit asserting claims for negligence and breach of fiduciary duty related to the alleged unauthorized settlement offer and failure to disclose the full amount of Bolton's medical expenses.  See generally Second Am. Compl.  In response to Defendants' interrogatories seeking disclosure of all alleged damages, Trice responded that she is claiming "one category of damages—undisclosed medical expenses" plus pre- and post-judgment interest in the total amount of approximately $750,000.  Second Vaccaro Decl. Ex. P [Docket No. 109, Attach. 5] at 16–17.

In April 2019, NS and PNL moved to dismiss the claims against them, arguing that Trice

failed to adequately plead successor liability, and that the real party in interest was NBRS.  See

Defs.' Mem. Supp. Mot. Dism. [Docket No. 25] at 12–14.  The Court denied the motion because

Trice had alleged that:  (1) NS had asserted a right to fees in the Toyota Litigation based on

NBRS' engagement, and (2) PNL represented that Trice's case against Toyota was assigned to

PNL after the split of NBRS.  Mem. Op. Order, Jun. 26, 2019 [Docket No. 63] at 9.  The Court

also stated that "[a]dditional discovery is necessary to determine whether NBRS is a viable

entity, and whether PNL or NS expressly or impliedly agreed to assume NBRS' liabilities in the

Toyota Litigation."  Id. at 10.

Defendants then filed an Answer in which NS asserted a counterclaim for quantum

meruit fees.  Joint Answer at 10.  NS stated it was the assignee of NBRS's right to compensation

for its work in the Toyota Litigation, and that Trice is obligated to pay NS for the reasonable and

fair value of NBRS's services.  Id.  Trice moved to dismiss the counterclaim, and the Court

granted the motion upon finding that the counterclaim was duplicative of NS' quantum meruit

claim in the Toyota Litigation.  Mem. Op. Order, Nov. 26, 2019 [Docket No. 90] at 4–5.

The parties have now filed cross motions for summary judgment and motions to exclude

expert opinions.

### III.  DISCUSSION

**A.  Summary Judgment Motions**

**1.  Legal Standard**

Summary judgment is appropriate if there are no genuine issues of material fact and the

moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(a).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the

evidence is such that it could lead a reasonable jury to return a verdict for either party.  Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences to be drawn from those facts.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  However, the nonmoving party "may not rest upon allegations, but must produce probative evidence sufficient to demonstrate a genuine issue [of material fact] for trial."  Davenport v. Univ. of Ark. Bd. of Trs., 553 F.3d 1110, 1113 (8th Cir. 2009) (citing Anderson, 477 U.S. at 247–49).

### 2. Trice's Summary Judgment Motion

Trice argues she is entitled to summary judgment under the doctrines of collateral estoppel, res judicata, and the law of the case.  Trice contends that the Court's findings and conclusions in the prior attorney fee dispute satisfy the elements that Trice must prove in this case to establish that Defendants are liable for attorney malpractice.  Trice argues that Defendants are precluded from re-litigating matters that were decided in the fee dispute.

Defendants oppose the motion, arguing that the findings in the dispute over NS' quantum meruit claim for attorney fees in the Toyota Litigation cannot be applied here to impose affirmative liability for alleged legal malpractice causing damages in excess of the attorney fees.

### a. Collateral Estoppel

Under Minnesota law, collateral estoppel prevents a party from relitigating issues that were determined in a prior action.  Nelson v. Am. Family Ins. Grp., 651 N.W.2d 499, 511 (Minn. 2002).  Collateral estoppel may apply when:

> (1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

Id.

"Courts do not apply collateral estoppel rigidly and focus instead on whether an injustice would be worked upon the party upon whom the estoppel is urged."  Id.  For example, applying collateral estoppel against a defendant may be unfair if the defendant had less incentive to vigorously litigate the earlier action or if the defendant did not have the same procedural opportunities in the first action that are available in the second action.  Parklane Hosiery Co. v. Shore, 439 U.S. 322, 330–31 (1979).  A district court possesses broad discretion in determining when collateral estoppel should be applied.  Id. at 331.

Here, applying collateral estoppel against Defendants would be improper for at least three reasons.  First, the issues in the two actions are not identical.  In the Toyota Litigation, the "core issue" in the attorney fee dispute was "the reasonable value of the legal services [NS] provided to Trice."  Napoli, 955 F.3d at 750.  NS bore the burden of showing that Trice benefitted from its services.  The factors relevant to this issue included:  "the time and labor required; the nature and difficulty of the responsibility assumed; the amount involved and the results obtained; the fees customarily charged for similar legal services; the experience, reputation, and ability of counsel; and the fee arrangement existing between counsel and the client."  Fee Order at 13 (quoting Paulson, 188 N.W.2d at 426).  The Court concluded that NS was not entitled to quantum meruit fees because the net effect of NS' representation caused Trice more harm than good, and thus Trice did not benefit from NS' services.  Id. at 15.  Although Trice argued in the attorney fee proceeding that NS forfeited its right to fees by engaging in bad faith and breaching its fiduciary duties to Trice, the Court did not rely on Trice's fee forfeiture arguments.  Instead, the Court focused on the reasonable value of services NS provided to Trice.

In this action, the issue is whether Trice can carry her burden of proving each element of her attorney malpractice claim against the Defendants. Those elements are: "(1) the existence of an attorney-client relationship; (2) acts constituting negligence or breach of contract; (3) that such acts were the proximate cause of the plaintiff's damages; and (4) that but for defendant's conduct, the plaintiff would have been successful in the prosecution or defense of the action." Ryan Contracting Co. v. O'Neill & Murphy, LLP, 883 N.W.2d 236, 242 (Minn. 2016). The focus is not on the reasonable value of NS' services, but instead on whether Defendants' representation of Trice deviated from the requisite standard of care and, if so, whether Defendants' negligence caused harm to Trice. Because the issues in this malpractice action are not identical to those in the attorney fee proceeding, collateral estoppel shall not be applied here.

Second, Defendants did not have a full and fair opportunity to be heard on the issues of legal malpractice when their attorney fee petition was rejected in the Toyota Litigation. Attorney fee disputes are collateral, summary proceedings. See Thomas A. Foster & Assocs., Ltd v. Paulson, 699 N.W.2d 1, 6 (Minn. Ct. App. 2005) (stating that the proceeding to establish the value of attorney fees and enter judgment for the amount due is summary). In a summary proceeding, the "controversy is settled . . . in a prompt . . . manner, without the aid of a jury." Id. Attorney fee proceedings do not include the typical characteristics of civil litigation such as written discovery, subpoenas, document productions, fact and expert depositions, and motion practice. See id. at 7 ("[T]he practicalities of a summary proceeding do not support the notion that a district court must transform an attorney-lien proceeding into a legal-malpractice trial."). Thus, even if the issues in the prior attorney fee litigation had been identical, which they were not, Defendants did not have the same procedural opportunities in the first action that are available in this malpractice action.

Third, to the extent, if any, that there is overlap of issues among the two actions, there

was significantly less incentive to vigorously litigate the first action, which involved NS'

potential recovery of $112,000 in attorney's fees, than this second action, which involves

Defendants' potential liability for $750,000 in damages and prejudgment interest. Accordingly,

the Court declines to apply collateral estoppel here.

### b. Res Judicata

Trice also argues she is entitled to summary judgment under the doctrine of res judicata.

The doctrine of res judicata bars parties from raising claims in a subsequent action when: "(1)

the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved

the same parties or their privities; (3) there was a final judgment on the merits; (4) the estopped

party had a full and fair opportunity to litigate the matter." Brown-Wilbert, Inc. v. Copeland

Buhl & Co., P.L.L.P., 732 N.W.2d 209, 220 (Minn. 2007). "Whereas collateral estoppel

concerns issues that were actually litigated, determined, and were essential in a prior action, res

judicata concerns circumstances giving rise to a claim and precludes subsequent

litigation—regardless of whether a particular issue or legal theory was actually litigated."

Hauschildt v. Beckingham, 686 N.W.2d 829, 840 (Minn. 2004). As with collateral estoppel, the

focus of res judicata "is on whether [its] application would work an injustice on the party against

whom the doctrine[] [is] urged." Id. at 837.

Res judicata does not apply because, as discussed above, Defendants did not have a full

and fair opportunity to litigate this malpractice action during the prior attorney fee proceeding in

the Toyota Litigation, and its application would be unfair to Defendants.

### c. Law of the Case

The law of the case doctrine provides "that once a court decides upon a rule of law, that

decision is usually binding at subsequent stages of the same case." United States v. Hively, 437

F.3d 752, 766 (8th Cir. 2006). The doctrine "prevents the relitigation of a settled issue in a

case." Mosley v. City of Northwoods, Missouri, 415 F.3d 908, 911 (8th Cir. 2005).

Trice contends that although the attorney fee proceeding and this malpractice action are two separate cases, the law of the case doctrine nevertheless applies because the two cases have been recognized by the Court as related cases, and this malpractice action followed on the heels of the fee dispute in the Toyota Litigation. See St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp., No. 03-5471, 2006 WL 517639, at *3 n.3 (D. Minn. Mar. 2, 2006) (applying law of case doctrine in separate case where "the two cases are closely related in substance and in timing"). For the same reasons that applying collateral estoppel and res judicata would be unfair to Defendants, the Court also declines to apply the law of the case doctrine in this malpractice suit.

Because the preclusion doctrines do not apply, Trice's motion for summary judgment is denied.

### 3. Defendants' Summary Judgment Motion

Defendants also present several arguments for why they are entitled to summary judgment.

### a. Dismissal of Hunter Shkolnik

Defendants argue that Trice has not elicited expert evidence about anything Shkolnik did or did not due that was negligent. Instead, Trice's expines generally about the conduct of "the Napoli Firm" and offers no expert opinion about Shkolnik individually.

For Trice to successfully establish direct liability against Shkolnik for malpractice, she must present evidence of, among other things, "acts constituting negligence or breach of contract" that caused Trice damage. Ryan Contracting Co., 883 N.W.2d at 242. "An attorney who is sued for malpractice is entitled to a specific disclosure of the ways in which that attorney is alleged to have breached the standard of care." Afremov v. Sulloway & Hollis, P.L.L.C., 922

F. Supp. 2d 800, 816 (D. Minn. 2013) (emphasis in original).

Here, Trice's expert presents no evidence of any negligent acts by Shkolnik or ways in which Shkolnik breached the standard of care. Rather, the allegedly negligent acts were committed by former NBRS attorney Cleere, who is not named in this action. See Second Vaccaro Decl. Ex. P [Docket No. 109, Attach. 5] Ex. P (Pl.'s Interrog Answer) at 13–14.

Trice argues that Shkolnik is nevertheless liable under the doctrine of vicarious liability. Under this doctrine, "if an employer expects to derive certain advantages from the acts performed by others for him, he, as well as the careless employee, should bear the financial responsibility for injuries" resulting from the negligent performance of those acts. Laurie v. Mueller, 78 N.W.2d 434, 437 (Minn. 1956). Trice contends vicarious liability applies to Shkolnik because he was the named partner at NBRS who personally undertook the representation of Trice and signed the engagement letter on behalf of NBRS. See First Rahne Aff. Exs. 14, 15. Trice argues that as the named responsible partner, Shkolnik anticipated benefitting from the retention and legal work his firm did for Trice, and that numerous negligent acts were committed by persons Shkolnik presumably assigned to work on Trice's case during the time he was engaged as her lawyer.

This argument fails because NBRS is a limited liability partnership, and "[a]n obligation of a . . . limited liability partnership, whether arising in contract, tort, or otherwise, is solely the obligation of the partnership. A partner is not personally liable . . . for such an obligation solely by reason of being or so acting as a partner." Minn. Stat. § 323A.0306(c). Thus, the LLP structure of NBRS shields Shkolnik from the alleged liability of another negligent NBRS partner or of the firm itself. Because vicarious liability for the work of others does not apply, and Trice has not provided a specific disclosure of the ways that Shkolnik himself breached the standard of care, the claims against Shkolnik personally are dismissed.

14

### b. Successor Liability

Defendants next argue NS and PNL should be dismissed for lack of evidence to establish successor liability.  Defendants note that when Trice's successor liability claims were allowed to succeed beyond the motion to dismiss stage, the Court stated that "[a]dditional discovery is necessary to determine whether NBRS is a viable entity, and whether PNL or NS expressly or impliedly agreed to assume NBRS' liabilities in the Toyota Litigation."  Defs.' Mem. Supp. Summ. J. [Docket No. 107] at 21 (quoting Mem. Op. Order [Docket No. 63] at 10).  Trice did not engage in affirmative discovery such as requesting corporate formation documents or deposing corporate officers to determine NBRS' status or its relationship to NS and PNL. Defendants thus contend that NS and PNL are entitled to summary judgment on this issue.

Trice responds that her primary concern is that a Defendant who may be responsible for the ultimate payment of any judgment not be dismissed, thereby prejudicing Trice's ability to secure recovery.  Trice argues that affirmative representations have been made as to both NS and PNL that they are some form of successor entity, and that these representations are sufficient to defeat summary judgment for NS and PNL on the question of their respective successor liability. The Court agrees.

NS has repeatedly argued to this Court and the Eighth Circuit that it is the entity that performed services for Trice in the Toyota Litigation.  See Second Rahne Aff. [Docket No. 119] Ex. 9 at 2 ("Napoli Shkolnik (formerly Napoli Bern Ripka Shkolnik) conducted significant work on this action, and has asserted a lien for the reasonable value of its services.") (emphasis added); id. at 3 ("NS did considerable work on this matter . . . ."; "Napoli Shkolnik (then NBRS) first became involved in these matters in July 2012. . . . "; "The intention was for the NS firm to take a lead role in the litigation, which it did.").  This evidence is sufficient to raise a fact issue on whether NS is a successor entity that agreed to assume liability for NBRS' obligations related

15

to the Toyota Litigation.

As to PNL, Defendants' counsel provided Trice's counsel with a declaration in this case stating in part that the Toyota matter was assigned to PNL following the "split" of the NBRS firm.  First Vaccaro Decl. Ex. F [Docket No. 28].  This declaration raises a fact issue as to whether PNL is a successor entity that agreed to assume liability for NBRS' obligations related to the Toyota Litigation.

### c. Proof of Negligence

Defendants argue that Trice's negligence claim based on an alleged failure to timely disclose medical records is wholly speculative and fails as a matter of law.  Defendants present four arguments that the negligence claim fails for lack of proof.

First, Defendants argue Trice's negligence claim fails as a matter of law because she has presented no evidence that Toyota would have stipulated to an additional $500,000 in medical expenses had they been disclosed.  Defendants argue that discovery obtained in this malpractice case shows that Toyota was only willing to stipulate to the paid, not billed, medical expenses, and that any assertion to the contrary is purely speculative.  In support, Defendants cite to a December 31, 2014 letter from Toyota's counsel to White stating:

> The billing records that we obtained through the course of discovery, including the few produced by plaintiffs and by subpoenas to the medical providers plaintiffs identified reveal total medical expenses (not amounts billed) of $894,674.38. We are agreeable to a stipulation to that amount. We have no billing records applicable to Dakota County government agencies.  Nevertheless, I would be happy to reconsider and stipulate to a different amount if you can provide documentation produced during the course of discovery in this case that supports a different number.

Second Vaccaro Decl. Ex. M (emphasis added).

Summary judgment on this issue is not warranted because Trice has adduced evidence from which a reasonable jury could conclude that Toyota was willing to stipulate to billed

medical expenses had they been disclosed.  At trial, Toyota stated that it would agree to stipulate to medical expenses that had been disclosed during discovery, but that it refused to stipulate to medical expenses that had not been disclosed in discovery.  See id. Ex. A at 181:6–182:13; First Rahne Aff. Ex. 2 at 77:21–22, 78:5–6.  The Court specifically asked whether Toyota's stipulation was to the amount billed or the amount paid, and Toyota's counsel replied that it was the amount billed.  Second Vaccaro Decl. Ex. A at 182:1–4.  Toyota's counsel repeatedly emphasized that the reason for not stipulating to the additional medical expenses was they had not been disclosed.  See First Rahne Aff. Ex. 2 at 77:21–22 ("[T]he issue that we're dealing with here is disclosure, what has been disclosed."); 78:5–6 ("[T]hat's the issue here.  The billing records have not been produced.").

Second, Defendants argue that Trice has no competent proof of her damages because she has produced only summary documents listing Devyn Bolton's medical bills rather than the actual bills.  As evidence of Bolton's medical expenses, Trice has produced the sworn declaration of Optum business manager Jennifer Stevens, who attests to UCare bills totaling $1,266,117.61 and attaches a summary of the bills.[2]  First Rahne Aff. Exs. 4, 5, and 6 [Docket Nos. 132, 133, and 134].  Trice has also produced hundreds of pages of bills from DHS/Dakota County totaling $284,775.56.  Id. Ex. 7 [Docket Nos. 135, 136, and 137].  Trice has further produced a summary of the DHS/Dakota bills that Trice's counsel created in preparation for the trial in the Toyota Litigation.  Id. Ex. 8 [Docket No. 138].  This evidence is sufficient to show the existence of medical bills that were not produced in discovery.

Third, Defendants contend that Trice possessed no right to bring a claim for medical expenses because she is a medical assistance recipient and was required to assign all rights to her

---

[2] Optum provides cost recovery services for UCare.  First Rahne Aff. Ex. 4 [Docket No. 132] ¶ 3.

medical expense claim to the Minnesota Department of Health and UCare.  However, a medical assistance recipient has a right to bring a claim for medical expenses, even if those expenses are subject to the state's liens, subrogation, and assignment rights.  See Brown v. State, 617 N.W.2d 421, 426 (Minn. Ct. App. 2000) (stating that a medical assistance recipient has "a right to bring a claim for damages against the . . . defendants, but [plaintiff does] not have a right to retain the damages representing the state-paid medical expenses"); Rodriguez ex rel. Rodriguez v. Southern, No. A09-1169, 2010 WL 773379, at *2 (Minn. Ct. App. Mar. 9, 2010) ("The [S]upreme [C]ourt specifically recognized that procedure may vary in cases involving medical assistance and claims against a third party. The recipient's 'assignment enables the state to acquire the recipient's property rights to [the claim for medical expenses] and to take independent legal action, or ... to be joined as a party to the recipient's action.'") (quoting Martin ex rel. Hoff v. City of Rochester, 642 N.W.2d 1, 24 (Minn. 2002)).  Thus, Trice has the right to pursue a claim for medical expenses.

Fourth, Defendants argue that Padden and the Chesley Firm undertook the responsibility to produce Devyn Bolton's medical records, but failed to do so, long before NBRS became involved in 2012.  Defendants have adduced evidence in this case showing that Toyota issued discovery requests to Padden, White, and the Chesley Firm in August 2011, and that the document requests specifically sought a complete set of Devyn Bolton's medical records. Second Vaccaro Decl. Ex. F. [Docket No. 109, Attach. 1] at DEF00181.  Defendants contend, and Trice admits, that because Bolton died in 2007, the records were available by the time of Toyota's 2011 discovery requests.  Id. Ex. T (Pl.'s Resp. Request Admissions) at 2. Additionally, in December 2011, the Chesley Firm sent an email to Padden asking him to collect all medical records and bills in Trice's possession, and stating that the Chesley Firm was "also going to go ahead and request a complete set of records for Devon [sic]."  Second Vaccaro Decl.

18

Ex. G.  Padden's litigation file included a note identifying "Medical expenses/records on . . .

Devyn Bolton" as being among the "List of documents necessary in the Toyota file."  Id. Ex. H.

Defendants argue this evidence is sufficient to entitle them to summary judgment on this issue.

However, sufficient evidence exists from which a reasonable jury could conclude that

NBRS was responsible for producing the undisclosed medical records.  In the Toyota Litigation,

NS' counsel submitted a sworn declaration stating that "NBRS handled a considerable amount of

discovery materials in the Toyota Litigation, including responding to discovery requests and

tendering related medical records."  Farnolo Decl. [Toyota Litigation Docket No. 745] ¶ 6.  In

January 2013, White received a courtesy copy of a letter sent by Toyota to NBRS informing

them that discovery responses were overdue and specifically referring to the Fifth Request for

Production.  White sent an email to NBRS seeking assurance that the discovery deficiencies

were being addressed.  NBRS attorney Cleere replied by informing White that Toyota was

"looking for medicals on Devyn Bolton" and that NBRS had responded to the request.  Coates

Decl. Ex. 3.  Cleere also sent a letter to Toyota with a courtesy copy to all counsel stating that

NBRS had forwarded the medical release authorizations to Trice and, upon receipt, would

"forward [them] . . . along with plaintiff's expert disclosures."  Third Vaccaro Decl. Ex. A.  This

evidence raises a material fact issue as to whether NBRS was responsible for producing the

medical records and failed to do so.[3]

---

[3] In their reply brief, Defendants also argue that they were not responsible for producing
Bolton's medical bills because Toyota's lawyers agreed to obtain Bolton's medical bills and
records and then provide them to Trice's counsel.  See Defs.' Reply Mem. Supp. Summ. J.
[Docket No. 142] at 4–5.  Because the argument was first raised in Defendants' reply brief, the
Court need not consider it.  Even if the argument had been timely raised, it does not entitle
Defendants to summary judgment because the evidence shows that Toyota alerted NBRS in
January 2013 that it was looking for Bolton's medical records, and NBRS responded that it was
in the process of obtaining medical release authorizations from Trice and would forward them to
Toyota along with plaintiff's expert disclosures.  Third Vaccaro Decl. Ex. A.

Defendants' challenges to the adequacy of Trice's proof lack merit. Trice has adduced sufficient evidence of her negligence claims to thwart summary judgment.

### d. Dismissal Pursuant to Minn. Stat. § 544.42

Defendants argue that Trice's claims should be dismissed for failure to comply with Minn. Stat. § 544.42. The statute requires that, within 180 days after service of the complaint, a plaintiff alleging negligence or malpractice against a professional must provide an affidavit that:

> must be signed by the party's attorney and state the identity of each person whom the attorney expects to call as an expert witness at trial to testify with respect to the issues of negligence, malpractice, or causation, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion.

Minn. Stat. § 544.42, subd. 4(a).

Defendants argue that Trice's expert affidavit does not satisfy the statutory requirement to assert claims of negligence by NBRS. Defendants contend the affidavit is deficient because the expert's opinion—that NBRS failed to disclose $500,000 of Bolton's medical bills in the course of the Toyota Litigation, which caused harm to Trice—is based solely on declarations submitted in the Toyota Litigation by attorneys with interests directly adverse to NBRS rather than on any independent, probative evidence. This argument goes to the reliability of the opinion, rather than whether the requirements of Minn. Stat. § 544.42 have been met. The Court finds that Trice has satisfied the statutory requirements. Defendants' challenge to the reliability of the expert opinion is addressed below in the discussion of Defendants' <u>Daubert</u> Motion.

Defendants also argue that Minn. Stat. § 544.42 has not been satisfied as to NS and PNL because Trice's expert fails to specify the manner in which NS and PNL breached any standard of care causing damage to Trice. This argument ignores that Trice alleges NS and PNL are liable for NBRS' negligence premised on successor liability.

Based on the above, the Court grants Defendants' summary judgment motion to the

extent it requests dismissal of the claims against Shkolnik, and denies Defendants' summary judgment motion in all other respects.

## B. **Daubert** Motions

Trice and Defendants have each retained experts to offer expert opinions regarding the allegations in this case. Both Trice and Defendants argue that portions of the opposing party's expert opinion should be excluded.

### 1. Legal Standard

The admission of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

When evaluating the admissibility of expert testimony, a trial court serves as the gatekeeper to ensure that the proffered testimony is reliable and relevant. Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 (1993); Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999). A trial court has broad discretion in fulfilling its gatekeeping role. Wagner v. Hesston Corp., 450 F.3d 756, 758 (8th Cir. 2006). The proffered testimony must be useful to the fact-finder, the expert must be qualified, and the proposed evidence must be reliable. Lauzon v. Senco Prods., Inc., 270 F.3d 681, 686 (8th Cir. 2001). The proponent of the expert testimony bears the burden of showing by a preponderance of the evidence that the testimony is admissible. Id.

"[R]ejection of expert testimony is the exception rather than the rule," and expert testimony should be admitted if it "advances the trier of fact's understanding to any degree." Robinson v. GEICO Gen. Ins. Co., 447 F.3d 1096, 1100 (8th Cir. 2006). "As a general rule, the

factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination."  United States v. Finch, 630 F.3d 1057, 1062 (8th Cir. 2011) (internal quotations and alterations omitted).  "Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded."  Bonner v. ISP Techs., Inc., 259 F.3d 924, 929–30 (8th Cir. 2001).  Doubts about the usefulness of an expert's testimony should generally be resolved in favor of admissibility.  Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 758 (8th Cir. 2006).

### 2. Trice's Daubert Motion

Defendants designated Charles D. Slane, Esq. ("Slane") to offer expert opinions regarding Defendants' representation of Trice in the Toyota Litigation and to address the opinions of Trice's expert, Sam Hanson, Esq. ("Hanson").  Slane produced his expert report to Trice on November 26, 2019.  See generally Kovacevic Aff. [Docket No. 113] Ex. 1.

Trice argues that excerpts from Slane's opinion must be excluded as inadmissible expert testimony on legal matters.   "[E]xpert testimony on legal matters is not admissible," because "[m]atters of law are for the trial judge, and it is the judge's job to instruct the jury on them." S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc., 320 F.3d 838, 841 (8th Cir. 2003).

The first excerpt addresses the type of evidence required for Trice to prove her claim for medical expenses in the underlying case as well as the operation of the collateral source rule. Slane opines:

> In this case, Padden should have advised about two issues that were important to the claims for medical expense.  First, he should have been aware of and should have advised that it was necessary to have evidence of the actual bills rather than the amount of the lien. Although the Court may adjust the verdict later to reflect the amount of collateral source payments, in order to prove the claim evidence of actual bills is necessary.

Kovacevic Aff. Ex. 1 at 9.[4]  The second excerpt pertains to who has the right to present a claim for medical expenses:

> Second, when bills are paid by Medical Assistance the claim for medical expense is assigned to the payor. It is the payor, in this case OHS and UCare, that has the right to present a claim for medical expense. <u>Martin v. City of Rochester</u>, 642 N.W.2d 1 (Minn. 2002), <u>Guzman v. U.S. West</u>, 667 N.W.2d 489 (Minn. Ct. App. 2003).  It is therefore important to communicate with those entities and have them agree to have counsel pursue the claims.

<u>Id.</u>

The Court agrees these portions of Slane's opinion are inadmissible testimony on legal matters.  Regarding the first excerpt, Sloan's testimony that "actual bills" are necessary to prove a medical expense claim is an evidentiary ruling for the Court to decide.  As to the second excerpt, whether Trice has the right to bring a claim to recover payments made for medical expenses is a threshold standing issue for the Court to decide, not a fact for the jury to decide.  It is also not an accurate statement of the law.  As discussed above, a medical assistance recipient has a right to bring a claim for medical expenses, even if those expenses are subject to the state's liens, subrogation, and assignment rights.  Trice's <u>Daubert</u> motion to exclude the identified portions of the expert report is granted.

### 3. Defendants' <u>Daubert</u> Motion

Trice retained Hanson to provide an expert opinion on the issues of whether NS' conduct during its representation of Trice in the Toyota Litigation was consistent with the knowledge, skill, and ability ordinarily exercised by similarly situated members of the legal profession and, if not, whether such conduct harmed Trice.  Fourth Vaccaro Decl. [Docket No. 102] Ex. B.  Hanson opines that NS negligently failed to disclose approximately $500,000 in medical

---

[4] Page citations to Slane's opinion are to the page numbers located on the bottom of each page the opinion.

expenses that Trice would have recovered if the expenses would have been disclosed.  Id. at 4.[5]

Hanson also opines that  Trice was harmed by NS' unauthorized settlement demand, the delayed

return of her case file, and the non-disclosure of Dr. Rosen as an expert witness.  Id. at 3–4.

Defendants move to exclude several portions of Hanson's opinion.  Defendants first

contend Hanson is not qualified to opine about NBRS' conduct, proximate cause, or but-for

causation because he lacks particular expertise in the area of medical expense disclosure and

medical liens.  The Court disagrees.  Hanson has 35 years' experience as a trial and appellate

lawyer in a private law firm.  Hanson Decl. [Docket No. 127] ¶ 5.  His practice included

numerous medical malpractice and personal injury actions.  Id.  Hanson also served on the

Minnesota Court of Appeals from November 2000 until September 2002, when he was appointed

to the Minnesota Supreme Court.  Id. ¶ 6.  During his 6-year tenure on the Minnesota Supreme

Court until his retirement in 2008, Hanson issued public disciplinary rulings concerning

complaints of lawyer misconduct.  Id. ¶ 8.  Hanson is well qualified to opine whether a lawyer's

conduct falls below the requisite standard of care and causes harm.  His opinion will be helpful

to a jury in explaining the procedural aspects of fact discovery, expert discovery, standards of

practice regarding settlement authority, and the proper handling of a client file upon discharge.

Hanson does not need specific expertise in the area of medical expense disclosure and medical

liens to determine whether Defendants' conduct adhered to the requisite standard of care and if,

not, whether such conduct harmed Trice.

Defendants next argue that Hanson's opinion that NS failed to disclose medical expenses,

and that the nondisclosure harmed Trice, must be excluded as unreliable.  Defendants contend

the opinion is based solely on self-serving declarations made by Trice's other attorneys in the

---

[5] Page citations to Hanson's opinion are to the page numbers located on the bottom of
each page of the opinion.

Toyota Litigation during a dispute over the distribution of their fees, and that Hanson did not review the medical records that NS allegedly failed to produce.  Defendants also argue that Hanson's opinion that Toyota would have stipulated to the additional medical expenses is speculative and contradicted by evidence in the record.

Hanson's opinion on the nondisclosure of medical expenses and resulting harm to Trice is sufficiently reliable for purposes of admissibility because the opinion is based on a range of evidence, including the scheduling order in the Toyota Litigation, discovery requests and responses in the Toyota Litigation, correspondence among counsel regarding responsibility for responding to discovery requests, and several sworn declarations with attached exhibits submitted in the attorney fee proceeding.  Although Defendants contend the declarations from the fee dispute are self-serving, this argument goes to the credibility of the opinion rather than its admissibility and is appropriate fodder for cross-examination.

Additionally, Hanson's opinion that the nondisclosure of medical bills forced Trice to reduce her medical expense reimbursement claim from $1.5 million to $1 million is not mere speculation.  As discussed above, Toyota agreed at trial to stipulate to medical expenses that had been disclosed during discovery, but refused to stipulate to medical expenses that had not been disclosed in discovery. Toyota's counsel repeatedly stated that the reason for not stipulating to the additional medical expenses was they had not been disclosed.  See First Rahne Aff. Ex. 2 at 77:21–22 ("[T]he issue that we're dealing with here is disclosure, what has been disclosed."); 78:5–6 ("[T]hat's the issue here.  The billing records have not been produced.").  As a result, the Court limited the amount of medical expenses that was admissible at trial to the amounts disclosed in discovery.  Based on these events, it is not mere speculation to conclude that the nondisclosure of medical bills forced Trice to reduce her medical expense reimbursement claim.

Defendants also argue that Hanson's opinions about the unauthorized settlement demand,

the delayed return of Trice's case file, and the non-disclosure of Dr. Rosen are irrelevant because the only damages alleged by Trice arise from the alleged failure to disclose medical expenses. However, the additional incidents of alleged malpractice may be relevant to showing a pattern of conduct when representing Trice.  Defendant also suggests that Hanson's opinions on the additional incidents are inadmissible under Rule 403 because they are more prejudicial than probative.  This argument is more properly raised in a motion in limine, and thus the Court defers ruling on the Rule 403 argument until trial.

Defendants' <u>Daubert</u> Motion is denied.

### IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Plaintiff Bridgette Trice's Motion for Summary Judgment [Docket No. 116] is **DENIED**;

2.      Trice's Motion to Exclude Portions of Expert Opinion [Docket No. 110] is **GRANTED**;

3.      Defendants' Motion to Exclude Expert Opinion [Docket No. 97] is **DENIED**; and

4.      Defendants Napoli Shkolnik PLLC, Hunter J. Shkolnik, Napoli Bern Ripka Shkolnik LLP, and Paul Napoli Law PLLC's Motion for Summary Judgment and to Dismiss [Docket No. 104] is **GRANTED IN PART and DENIED IN PART** as follows:

        a.  The claims against Defendant Hunter J. Shkolnik are dismissed; and

        b.  Defendants' Summary Judgment Motion is denied in all other respects.

.

                              BY THE COURT:


                              ____s/Ann D. Montgomery_____
                              ANN D. MONTGOMERY
                              U.S. DISTRICT COURT


Dated:  August 19, 2020